UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION (MASTER FILE) NO. 5:06-cv-316 - KSF

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

| RELATING TO: | | |
|---|---|---|
| | *Anderson* | 5:07-CV-270 |
| | *Byrd* | 5:06-CV-371 |
| | *Combs* | 5:07-CV-312 |
| | *Cone* | 5:07-CV-015 |
| | *Dawson* | 5:07-CV-300 |
| | *Fahey* | 5:07-CV-411 |
| | *First Citizens (N. Kono)* | 5:07-CV-316 |
| | *First Citizens (T. Kono)* | 5:07-CV-317 |
| | *Fortney* | 5:07-CV-309 |
| | *Frederick* | 5:07-CV-319 |
| | *Harris* | 5:06-CV-292 |
| | *Hunt* | 5:06-CV-400 |
| | *Lykins* | 5:07-CV-306 |
| | *Mallory* | 5:07-CV-124 |
| | *Theodore* | 5:07-CV-315 |
| | *Thomason* | 5:07-CV-324 |
| | *Trimble* | 5:07-CV-269 |
| | *Turner* | 5:07-CV-326 |
| | *Winters* | 5:07-CV-127 |
| | *Polehinke* | 5:07-CV-272 |
| | *Heyer* | 5:07-CV-273 |
| | *Clay* | 5:07-CV-274 |

**OPINION AND ORDER**

This matter is before the Court on the motion of the Estate of Jeffrey Clay, the Estate of Kelly Heyer, and James M. Polehinke ("Crew Plaintiffs") to reconsider this Court's Opinion and Order granting Summary Judgment in favor of Jeppesen Sanderson, Inc. ("Jeppesen")[DE 3125] in the above cases. Having been fully briefed, this motion is ripe for review.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On June 27, 2008, this Court granted Jeppesen's motion for summary judgment on all claims against it by the Crew Plaintiffs. *In re Air Crash at Lexington, Kentucky, August 27, 2006,*

2008 WL 2704155 (E.D. Ky. 2008).  The Crew Plaintiffs also have claims pending against the United States, and Plaintiffs Clay and Heyer have claims against First Officer Polehinke.  The June 27, 2008 Opinion and Order did not expressly state there was "no just reason for delay" as required for a final judgment under Fed. R. Civ. P. 54(b), nor did the Court enter a separate Judgment, as required under Fed. R. Civ. P. 58.

On July 14, 2008, the Crew Plaintiffs filed a "Motion to Reconsider Order Granting Jeppesen's Summary Judgment Motion." [DE 3125].  They argue that a motion to reconsider may be construed as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e).  When weekends and holidays are excluded, the motion was filed within ten days after the entry of the summary judgment.  The Crew Plaintiffs ask this Court to deny Jeppesen's summary judgment motion based on what they characterize as "newly discovered" evidence that "rebuts the Court's basis for granting summary judgment and creates a genuine issue of material fact." *Id.* at 2.  The evidence on which they rely was obtained during the June 25, 2008 deposition of Jeppesen's expert, Julianne Fox.  It consists of Fox's agreement that it is "probable" when First Officer Polehinke said take taxiway Alpha and runway "two two's a short taxi," he looked at the Jeppesen chart to get that information. [DE 3126, p. 267].  The Crew Plaintiffs do not mention Fox's other testimony: "There is evidence that suggests ... that chart was referenced before taxi, but not during taxi and up to takeoff." *Id.* at 266.  On July 25, 2008, the Crew Plaintiffs filed their notice of appeal from the June 27, 2008 Opinion and Order.

Jeppesen's response first argues that Rule 59 is not applicable because no final judgment was entered, but it says the Court may reconsider the interlocutory order pursuant to Rule 54. Jeppesen also claims the notice of appeal may be ignored, since it was from a nonappealable order. Thus, it claims the Court still has jurisdiction.  [DE 3205, p. 2, n. 2].

Regarding the merits of the motion, Jeppesen responds that the Court has already rejected claims that the "take ... Alpha" remark created a genuine issue of material fact regarding causation. It notes that the Crew Plaintiffs relied on this same remark from the Cockpit Voice Recorder in

2

opposition to summary judgment, but the Court noted that this "potential reference to the chart is prior to taxi...." *In re Air Crash at Lexington*, 2008 WL 2704155 at *3. The Crew Plaintiffs' expert, Moss, admitted that the "take Alpha" reference was "the extent of the taxiing information that went from First Officer Polehinke to Captain Clay." [DE 3205, p. 4]. Jeppesen argues that the fact the chart was referenced at the gate does not in any way show that Captain Clay was misled by the chart while taxiing to the wrong runway. To the contrary, several experts said it was not likely that the pilots were relying on the Jeppesen chart when they turned onto Runway 26. Jeppesen disagrees that the evidence on which the Crew Plaintiffs rely is "newly discovered," since the same evidence from other witnesses was available and relied upon in opposing summary judgment. Jeppesen also disagrees that the testimony from Fox undermines the Court's conclusion that the Crew Plaintiffs cannot "establish any probability that either pilot was actually using the chart to guide the taxi on the day of the accident or that the chart misled them." *In re Air Crash at Lexington*, 2008 WL 2704155 at *3.

## II. ANALYSIS

### A. Jurisdiction

Generally, "the filing of a notice of appeal divests the district court of jurisdiction and transfers jurisdiction to the court of appeals." *Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1981). In the case of a nonappealable order, however, the court said: "We are persuaded that filing a notice of appeal from a nonappealable order should not divest the district court of jurisdiction and that the reasoning of the cases that so hold is sound." *Id.* at 1222. *See also Lewis v. Alexander*, 987 F.2d 392, 394-95 (6th Cir. 1993) (quoting *Rucker v. United States Dept. of Labor*, 798 F.2d 891, 892 (6th Cir. 1986)) ("Furthermore, the district court retains jurisdiction over an action when an 'appeal is untimely, is an appeal from a non-appealable, non-final order, or raises only issues that were previously ruled upon in that case by the appellate court'").

In the present case, the summary judgment in favor of Jeppesen was not a final, appealable order. Accordingly, the notice of appeal did not divest this Court of jurisdiction to consider the

3

motion. Additionally, a motion to reconsider may properly be treated as a Rule 59 motion to alter or amend. *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979). *See also Clarendon Ltd. v. Foster*, 7 F.3d 232 (Table), 1993 WL 339703 (6th Cir. 1993). If a Rule 59 motion is timely filed, a new thirty-day filing period for a notice of appeal begins to run once the district court has ruled on the motion. Since the motion to reconsider in the present case asks the Court to reverse its decision and deny summary judgment, it will be treated as a Rule 59 motion. *Id.*

### B. Reconsideration

Comair Flight 5191 lined up and took off in darkness from the unlighted Runway 26 that was significantly too short for commercial aircraft. The pilots' clearance was to take off from Runway 22, a lighted runway twice as wide and twice as long. In granting Jeppesen's motion for summary judgment on June 27, 2008, this Court carefully considered the evidence relating to the Jeppesen chart and whether the pilots were misled by it such that it was a substantial factor in causing the crash of Comair Flight 5191.

> Captain Clay taxied the plane from the gate onto Runway 26. There is no evidence that Clay had the chart out or relied on it. The cockpit voice recording ("CVR") does not reflect reliance on the chart or that Polehinke was using it to assist Clay during the taxi. The potential reference to the chart is *prior to taxi* when Polehinke says: "Let's take it out and um, take uuuh, Alpha, two two's a short taxi."

*In re Air Crash at Lexington*, 2008 WL 2704155 at *3, emphasis added. Fox's testimony that it is "probable" that Polehinke was looking at the chart when he made this statement does not change the Court's conclusion regarding causation. Fox even said "that chart was referenced before taxi, but not during taxi and up to takeoff." [DE 3126, p. 266]. The CVR shows that the take Alpha remark was at 5:57 a.m. The clearance to taxi was not until five minutes later at 6:02 a.m.

The Crew Plaintiffs still have failed to establish any probability that the Jeppesen chart misled the pilots so as to cause the crash. "Absent evidence that the pilots were misled by the Jeppesen chart, the Crew Plaintiffs' theory of causation is based only on speculation and conjecture regarding possible causes." *In re Air Crash at Lexington,* 2008 WL 2704155 at *4.

4

The Crew Plaintiffs argue in their motion to reconsider that they "had already submitted strong habit evidence" that "Plaintiff James M. Polehinke and his captain had always used and relied upon the Jeppesen charts for taxiing to the departure runway, without exception." [DE 3125, p. 4]. The Crew Plaintiffs must be reading a different transcript of Mr. Polehinke's deposition than the one provided to the Court. The summary judgment opinion responded to that argument.

> Polehinke did not testify that it was always his practice to review the Jeppesen charts as the airplane is taxied, as Crew Plaintiffs claim. To the contrary, he testified that he used the charts "as needed" to get around on an airport. Whether he relied on the chart would "depend on the airport" and what they were going to be doing. Polehinke had never flown with Clay before and could not testify as to his practices. He also said he could not testify about what other Comair captains did and could not speak for them.

*In re Air Crash at Lexington*, 2008 WL 2704155 at *3. Polehinke could not testify from memory whether they referenced the chart the morning of the crash. *Id.* Even if there were evidence that the chart was being used during the taxi, despite the lack of support for that inference in the CVR, there still is no evidence the pilots were **misled** by the chart.

As the summary judgment opinion said: "Instead, the inferences from the evidence are to the contrary." *Id.* No one disputed that the Jeppesen chart available for the pilots on August 27, 2006 "accurately depicted the layout of the Blue Grass Airport taxiways and runways." *Id* at *4.

> The Jeppesen chart showed that a plane must cross Runway 26 in order to reach Runway 22. The Flight 5191 pilots never crossed Runway 26, however. Instead, they stopped at the hold short line of Runway 26 and then turned left onto the first runway they reached. They waited at the hold short line of Runway 26 for 50 seconds and never mentioned the barricades ahead of them or anything about the taxiways.

*Id.* In response to the question "[i]f he had, in fact, carefully read the Jeppesen chart and had the information that he needed to cross Runway 26 to get to 22, if he had that piece of information, that would make his decision to turn on Runway 26 and take off on Runway 26 less understandable; wouldn't it," Crew Plaintiffs' expert Douglas Moss said: "Yes, it would have." [DE 3205, Ex. 2, p. 169]. Crew Plaintiffs' expert Jeffrey Edwards said he would infer from the fact that the Jeppesen chart does show the three pieces of pavement that it was "most likely" that "Captain Clay was not

looking at the Jeppesen chart when he was at the hold short line." *Id.*, Ex. 3, p. 195. The United States' expert Ewell said: "It is apparent that whatever chart was used to obtain these necessary frequencies was obviously not used to determine their position on the field or their route to runway 22." *Id.*, Ex. 4, p. 3. Jeppesen's expert Fox testified: "if he saw that on a chart, he would have absolutely crossed Runway 26 to get to 22." *Id.*, Ex. 1, p. 204.

The pilots were familiar with Blue Grass Airport and the simple layout of its taxiways and two runways. During the past two years, Clay had landed or taken off six times, and Polehinke had landed or taken off twelve times. The only change on the ground that the Jeppesen chart did not depict was that taxiway Alpha was barricaded north of Runway 26, and the taxiway marked on the chart as A-5 was to be taken across Runway 26 to Runway 22. Yet, while waiting at the hold short line of Runway 26 for 50 seconds, the pilots never mentioned the barricades ahead of them or the taxiways. As they attempted to take off from Runway 26, they crossed the lighted and marked Runway 22, but never mentioned that or attempted to abort the takeoff. Even after Polehinke mentioned that it was weird there were no lights on the runway, neither pilot made any effort to stop the plane.

As the United States characterized the situation in its pretrial memo, "[t]he task given to the pilots of Flight 5191 was simple and straightforward: taxi to and take off from the only runway at Blue Grass Airport with lights on it." DE 2657, p. 1]. There are many possible causes for why the pilots did not do that, but the Crew Plaintiffs have not produced any evidence that the Jeppesen chart was a substantial factor in causing the crash. "[W]here an accident could have resulted for any number of reasons, the plaintiff has failed to establish the necessary proximate cause." *Calhoun v. Honda Motor Co., Ltd.*, 738 F.2d 126, 130 (6th Cir. 1984). When a party attempts to establish causation by circumstantial evidence, "the evidence must be sufficient to tilt the balance from possibility to probability." *Id.* (quoting *Perkins v. Trailco Mfg. & Sales Co*, 613 S.W.2d 855, 857 (Ky. 1981)). The Crew Plaintiffs' evidence regarding the Jeppesen chart has never risen to that level. Accordingly, their motion to reconsider is denied.

## III. CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that the motion of the Crew Plaintiffs to Reconsider Order Granting Jeppesen's Summary Judgment Motion [DE 3125] is **DENIED**.

This August 7, 2008.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge